[906 NYS2d 502]

In the Matter of the Estate of MARIE CASSIANO, Deceased.

Surrogate's Court, Bronx County, August 20, 2010

### APPEARANCES OF COUNSEL

*Reddy, Levy & Ziffer* (*Brian A. Cahalane* of counsel), for Bonnie Gould, Public Administrator of the County of Bronx. *Michael M. Lippman*, pro se, and previously for Bonnie Gould, Public Administrator of the County of Bronx. *William G. Sayegh, P.C.* (*Debora J. Dillon* of counsel) for Lorraine Ortolano, coadministrator.

### OPINION OF THE COURT

LEE L. HOLZMAN, J.

In this estate in which the Public Administrator and a maternal first cousin received letters of administration jointly, the Public Administrator submitted a proposed final decree and counsel for the maternal first cousin submitted a proposed counter decree. Previously, the administrators agreed to share one statutory commission; however, they never entered into any agreement concerning legal fees payable from estate assets to their respective counsel. Counsel for the coadministrator now takes issue with the amount of the legal fee paid to counsel who represented the Public Administrator. Moreover, this firm asserts that it is entitled to be compensated from estate assets for legal services primarily related to proving the status of alleged distributees and performing executorial services on behalf of the coadministrator.

The legal fee sought by counsel who represented the Public Administrator is within the guidelines governing compensation to counsel for Public Administrators (*see* Interim Report and Guidelines of Administrative Board for Offices of Public Administrators Pursuant to Surrogate's Court Procedure Act Section 1128 [approved by the Board Oct. 3, 2002] [Administrative Board Guidelines]). In opposition to the proposed decree and in support of the proposed counter decree, counsel to the coadministrator seeks legal fees, interest on those legal fees and disbursements. Counsel to the coadministrator also requests that a sufficient amount be held in reserve so that its legal fee is paid in full, and that its fee be satisfied by offsetting and deducting it from the legal fees sought by counsel who represented the Public Administrator. Thus, counsel to the coadmin-

istrator is of the opinion that a legal fee computed in accord with the Administrative Board Guidelines is appropriate; however, it contends that its firm is entitled to the lion's share of that fee.

The legal services performed by counsel who represented the Public Administrator and by counsel to the coadministrator, respectively, do not appear to be in dispute. Specifically, counsel who represented the Public Administrator seeks compensation for all legal services usually rendered on behalf of the Public Administrator in the administration of an estate, i.e., obtaining letters of administration, collecting the assets of the estate, paying administration expenses and debts, preparing an account, obtaining jurisdiction over all necessary parties prior to the kinship hearing that was conducted, participating at that hearing, and judicially settling the account (*see e.g.* SCPA 1123; EPTL 11-1.1). In contrast, and as reflected in an affirmation of services, counsel to the coadministrator primarily rendered services on behalf of the coadministrator and on behalf of other alleged distributees in connection with obtaining documents and presenting additional proof at the kinship hearing to establish the identity of the distributees entitled to distributive shares in this estate.

In estates administered by the Public Administrator, the Public Administrator is obligated to make efforts to ascertain who are the possible distributees and obtain jurisdiction over them so they can prove their status; however, it is not the role of the Public Administrator to prove the status of the distributees. Thus, the roles played by counsel who represented the Public Administrator and counsel to the coadministrator in this proceeding were quite different. Moreover, although it appears that all of the distributees consented to counsel to the coadministrator representing them as well, the record fails to disclose letters of engagement or written retainer agreements from any distributees other than the coadministrator (*see* 22 NYCRR 1215.1, 1400.3). Nonetheless, counsel to the coadministrator may recover for such legal services from the distributees entitled to share in the estate based on quantum meruit (*see Matter of Altman*, 1 Misc 3d 566 [2003]; *see also Nabi v Sells*, 70 AD3d 252 [2009]; *Egnotovich v Katten Muchin Zavis & Roseman LLP*, 55 AD3d 462 [2008]; *Seth Rubenstein, P.C. v Ganea*, 41 AD3d 54 [2007]). As a result, at a prior conference with the court, counsel to the coadministrator was advised that if it desired to pursue its fee request, it would be appropriate to commence an SCPA

2110 proceeding and obtain jurisdiction over all distributees in that proceeding. Although counsel to the coadministrator made some efforts to commence such a proceeding, the requisite papers to support the issuance of process were never filed.

Based upon this state of the record, the court finds no basis to "link" the legal fee sought and payable to counsel who represented the Public Administrator to the legal fee sought and payable to counsel to the coadministrator. Specifically, the process served in this accounting proceeding gave notice to the interested parties of a legal fee request by counsel who had represented the Public Administrator and no objections were interposed to the requested legal fee. On the other hand, to date, counsel to the coadministrator has not served process on the distributees in the SCPA 2110 proceeding to fix its legal fee; and therefore, the distributees have not had either notice or the opportunity to be heard with regard to the compensation now requested by this firm.

Turning to the issue of the legal fee to be awarded to counsel who represented the Public Administrator, as the "total charges" reported in the amended account in this estate is the sum of $1,646,830.67, the sliding scale fee established by the Administrative Board Guidelines is 6% of the first $750,000, 5.5% of the next $500,000, 5% of the next $250,000 and 4.5% of $146,830.67. In promulgating this sliding scale fee schedule the Administrative Board, in its Interim Report (at 2-3), stated:

> "The adopted schedule provides the 'customary fee charged . . . for similar services' in the overwhelming majority of estates that are administered by the Public Administrators and establishes a cap on the legal fees requested by counsel in these estates.

> "The amount of legal fees presently requested in most matters by the respective counsel for each of the Public Administrators is only one of the factors that the Board considered in enacting the schedule. The Board also considered that it is well settled that it is not appropriate to base a legal fee in this area of the law solely on a 'time-clock' approach and, in some instances, time might be the least important factor to be considered. Additionally, in arriving at a fair fee for the services performed, the Board balanced the fact that each estate pays for its legal services against the economic reality that most estates administered by the Public Administrators are relatively modest and that the Public Administra-

tors would be unable to retain competent counsel to provide legal services in many of these estates if counsel did not have the opportunity to receive more significant compensation in the more substantial estates. The 'rule of thumb' that the schedule adopts is a product of the input and the consensus of all members of the Board which includes representatives from the offices of the Attorney General and the Comptroller as well as several Surrogates and attorneys in private practice.

"The Board in enacting the schedule recognized that it is left to the sound discretion of the Surrogate to fix the reasonable compensation of counsel to be paid from each estate based upon 'the time and labor required, the difficulty of the questions involved, the skill required to handle the problems presented, the lawyer's experience, ability and reputation, the amount involved and benefit resulting to the estate from the services, the customary fee charged by the bar for similar services, the contingency or certainty of compensation, the results obtained, and the responsibility involved' (SCPA 1108[2][c]). The enacted schedule does not in any way impinge upon either the rights of interested parties with regard to counsel fees or the jurisdiction of the court to determine such issue." (Citations omitted.)

After consideration of all factors relating to the legal fees sought by counsel who represented the Public Administrator (*see* SCPA 1108 [2] [c]; *Matter of Freeman*, 34 NY2d 1, 9 [1974]; *Matter of Potts*, 213 App Div 59, 61 [1925], *affd* 241 NY 593 [1925]), the court finds that the legal fee requested, which is in accord with the Administrative Board Guidelines, should be allowed. Specifically, the court considered, inter alia, the following: the "total charges" reported in the amended account is the sum of $1,646,830.67; counsel avers that he performed 622 hours of legal services in the approximately five-year period that he represented the Public Administrator in this estate; the legal services that he rendered included a real estate closing, recovery of a bank account from the New York State Comptroller's Office of Unclaimed Funds and preparing for and participating in a kinship hearing; and that the sum of $8,100 which was paid to an accountant for preparation of estate tax returns was charged against the Administrative Board Guidelines fee requested by counsel.

With respect to the request of counsel to the coadministrator for a reserve to be held to pay any legal fee awarded to it from estate assets, in the absence of any retainer agreement with the other distributees providing for paying interest on the legal fee sought by counsel to the coadministrator, the court may not require that the sum requested in interest on the amount demanded in legal fees be held in reserve. Nonetheless, the court will direct the Public Administrator to retain a reserve for payment of any legal fees and disbursements, without interest, that may be charged against the shares of all of the distributees.

Accordingly, the proposed decree submitted by the Public Administrator has been modified to constitute an interim decree, which is entered the date of this decision, directing the Public Administrator to hold in reserve the sum of $61,807.50 in legal fees and $3,346.99 in disbursements (for a total of $65,154.49), to pay any legal fee allowed in the future from estate assets to counsel to the coadministrator. Counsel to the coadministrator is to pursue its claim for legal fees in an SCPA 2110 proceeding with reasonable expedition, as the reserve cannot be held for an indefinite period of time. Should counsel to the coadministrator fail to commence an SCPA 2110 proceeding within 60 days of the date of the entry of the interim decree judicially settling the account, or thereafter fail to obtain jurisdiction over all interested parties in that proceeding by the return date of process, then the Public Administrator may settle a final decree distributing the reserve amount to the distributees. Of course, the court is not presently ruling upon any legal fee that counsel might be entitled to recover from the coadministrator, individually, for services rendered that benefitted her individually, including those services that the firm rendered which were executorial rather than legal in nature.